No. 42.—James S. Watson and William C. Watson, *per prochain ami*, plaintiffs in error, *vs.* John H. Watson and B. W. Walker, executors of James C. Watson, deceased, *et al.*, defendants in error.

The estate of a guardian, who dies chargeable to his wards, is liable and bound therefor, before any other debt, though such other debt may have been prosecuted to judgment against the guardian, in his lifetime.

This was a bill in equity, filed by the plaintiffs, by their next friend, James A. Slaton, in Muscogee Superior Court, against Watson and Walker, executors of James C. Watson, deceased, and divers others, who were judgment creditors of said deceased. The bill sets forth that the complainants are the minor children of William C. Watson, deceased; that James C. Watson, the defendants' testator was, about the 5th of March, 1833, by the Court of Ordinary of Muscogee, duly appointed the guardian of the complainants, and as such he took possession of their estate ; that said James C. Watson, guardian, as aforesaid, in pursuance of leave by the said court of ordinary, on the 1st January, 1836, sold the specific property of the complainants—lands, negroes, &c.—and converted them into cash, to the amount of about seven thousand six hundred dollars ; that he continued to act as guardian of the complainants until the spring of 1843, when he died, indebted to the complainants, his wards, about $16,000 00,

and leaving his estate chargeable for that amount to the complainants, as his wards, as aforesaid.

The bill further sets forth, that the said James C. made a will, appointing four executors, of whom only the defendants, Watson and Walker, qualified.   The bill further states that, previously to the death of the said testator, Farish Carter and Michael J. Kenan, executors, &c., and divers others, whose names and residences are set forth in the said bill, as defendants, obtained judgments, and caused executions to issue against the said James C., defendants' testator ; and that, since his death, and before the qualification of the said Watson and Walker as executors, and also before they had actual possession of his effects, the said judgment creditors had levied their said executions on the real and personal estate of the said James C., defendants' testator ; that the estate levied is all within the jurisdiction of the court, of which the said James C. died possessed, and that it is insufficient to satisfy the demands of the complainants against said estate ; that the estate of said James C. is insolvent.   The bill further states, that the order of the court appointing the testator guardian of the complainants, as also the bond by him then given, have been destroyed by fire, and that the complainants do not know who the securities were ; and, also, that the order granting leave to sell has been burned.   The bill then concludes with a prayer that Watson and Walker, executors of James C. Watson, complainants' former guardian, may be compelled to account; and that sufficient of the estate of their testator may be decreed to be sold to satisfy the demand of the complainants ; and that Farish Carter and Michael J. Kenan, and the other judgment creditors, may be enjoined and restrained from further proceedings against said property levied on.   The bill was sanctioned, and, after several continuances and terms, given to perfect service, at May Term, 1846.

Several of the judgment creditors demurred to the complainants' bill, on the ground that they were not entitled to the relief or discovery prayed ; which said demurrer, after argument, was sustained by the court below, and the injunction dissolved; and the bill was dismissed as to the said judgment creditors.   To which decision the complainants excepted.

ALFRED IVERSON and JAMES JOHNSON, for the plaintiffs in error.

The court erred in dismissing the bill, because the statute compels executors to pay out of the estate of testator so much as shall appear to be due to the orphans of whom testator was guardian, before any other debt of testator.—*Hotchkiss*, 485.

The statute prescribes the order in which debts of the testator or intestate shall be paid by the executor or administrator, and postpones judgments to certain debts therein described.—*Hotchkiss*, 485.

See construction of the statute, R. M. Charlton's, Rep. 26.

This construction sustained.   See following cases and authorities.—2 *Bacon's Abr.* 436 ; 2 *Wms. on executors*, 719 ; 17 *Sergt. and Rawle*, 328 ; 2 *Devereaux*, 21 ; 9 *Wendell*, 456 ; 4 *Dallas*, 450 ; *Bur. Rep.* 246.

An English statute (*see* 2 *Wms. on executors*) prescribes that debts due by overseers and officers to friendly societies shall be first paid.—*See adjudications*, 6 *Ves.* 98, 441, 804; 15 *Ves.* 281.

The act of Congress gives to the United States priority of payment.—*See the act ; Conard vs. Ins. Co.*, 1 *Peters*, 438, and construction in the 6 following pages :—*Thellusson vs. Smith*, 2 *Wheaton*, 396 ; 4 *Wheaton*, 108 ; 2 *Cranch*, 421 3 *Cranch*, 73.

HINES HOLT and HENRY L. BENNING, for the defendants in error,

In support of the decision of the Court below, cited the following authorities : *Prince Dig.* 233, 435; *Toller's Law of Exrs.* 258, *note* 1 ; 2 *Cranch's Rep.* 358 ; .3 *ib.* 73, (90, 91;) 2. *Wheaton*, .396, (426 ;) 1 *Peters' Rep.* 386, .(431 ;) 1 *M'Cord's Chan. Rep.* 466, *citing* 1 *Dess.* 456 ; 3 *Dess.* 530 ; 4 *Ves.* 538, 638 ; 1 *J. Ch. Rep.* 305; 4 *ib.* 619, 643 ; 2 *M'Cord's Ch. Rep.* 416 ; 1 *ib.* 167.

*By the Court*—WARNER, Judge.

The main question made on the argument of this cause, for the consideration of the court, was as to the construction which should be given to the fifth section of the act of 18th February, 1799. The fifth section is in the following words : "When any guardian, executor, or administrator, chargeable with the estate of any orphan, or deceased person, to him, her, or them committed, shall die so chargeable, his, her, or their executors, or administrators, shall be compellable to pay out of his, her, or their estate, so much as shall appear to be due to the estate of such orphan, or deceased person, before any other debt of such testator or intestate.—*Prin. Dig.* 233. It is insisted for the defendants in error, that, inasmuch as the creditors of General Watson obtained their judgments against him, prior to his death,. a lien was thereby created on his property, by virtue of the 26th section of the judiciary act of 1799, which declares : "All the property of the party against whom such verdict shall be entered, shall be bound, from the signing of the first judgment," &c.—*Prin. Dig.* 426. At the time of Watson's death, no levy had been made on the property ; but the defendants in error contend, such judgment creditors are entitled to be paid out of the property now in the hands of his executors, in preference to the claim of the complainants in the bill, who are the plaintiffs in error ; because a lien was created in their favor, under the judiciary act of 1799. In support of their position, the defendants in error rely mainly on the case of *Conard* vs. *The Atlantic Insurance Company*, (1 *Peters' Rep.* 386,) and other cases, decided by the Supreme Court of the United States, giving a construction to the priority act of Congress, passed in the year 1799.

Without questioning the authority of any of the cases cited at the bar by the counsel for the defendants in error, our judgment must be controlled by the clear intention of the Legislature of Georgia, to be gathered from the several enactments to be found on the pages of our statute book. By the act of 18th December, 1792, (*Prin. Dig.*, 228,) it is declared, the debts due by any testator, or intestate, shall be paid by executors and administrators in the order following, to wit : "Funeral and other expenses of the last sickness ; charges of probate and will, or of the letters of administration ; next debts due to the public ; next judgments, mortgages, and executions, the eldest first ; next rent ; then bonds or other obligations; and lastly open accounts." It appears from the record in this case, the property levied on is all that belongs to the testator's estate, within the jurisdiction of the court ; and it further appears, his estate is *insolvent*. The position of the defendants in error goes to the extent, that a judgment obtained against the testator in his lifetime, would be entitled to seize the property in the hands of his executors, and apply the proceeds of the sale

under execution, in satisfaction thereof, in preference to the funeral, and other expenses of the last sickness, charges of probate, and *debts due to the public ;* because a *lien* was created on the property by the judgment, prior to the death of the testator, by the judiciary act of 1799. Such has not been the contemporaneous construction given to the acts of 1792 and 1799 by the courts of this State, so far as we know or believe. The judiciary act of 1799, which creates the supposed lien, was passed on the 16th day of February of that year. The act, under which the plaintiffs in error claim *priority* of payment, was passed during the same session of the Legislature, on the 18th day of February, 1799; two days after the enactment of the judiciary act. The defendants in error, however, seek to derive some assistance from the act passed 13th December, 1810, (*Prin. Dig.* 535,) which declares, in substance, the same as the judiciary act of 1799, " that all the property belonging to the defendant or defendants, shall be bound and subject to the first judgment or judgments, obtained in either of the Superior, Inferior, or Justices' Courts of this State." We do not think this latter statute at all conflicts or interferes with the act of 18th February, 1799, under which the plaintiffs in error claim priority of payment. Before the passage of the act of 13th December, 1810, the rule was unsettled whether judgments obtained in the Justices' Courts of this State, or in the Inferior Courts, although of equal or older date with judgments obtained in the Superior Courts, stood on the same footing, as regarded the right to claim money in the hands of sheriffs, coroners, or constables.

This act was passed for the purpose of settling a *definite rule* on that subject, as its title purports. It is entitled, " An act to point out a *regular and definite rule for the priority of judgments, obtained in the several courts in this State.*" The conflict was mostly in regard to judgments obtained in Justice's Courts, where there was *no verdict of a jury,* as mentioned in the judiciary act of 1799 ; and the act of 1810 was intended to place all judgments on the same footing, whether obtained in the Superior, Inferior, or Justice's Courts. All judgments obtained in either of the aforesaid courts, bind the property of the defendants for the payment of the debt, so as to prevent an *alienation* thereof by him. But the title to the property continues in the defendant, notwithstanding the rendition of the judgment, until seizure and sale, in the manner pointed out by law. When, therefore, the judgments were obtained against Watson in his lifetime, all his property was bound for the payment thereof, so far as to prevent an alienation of the same by him, according to the true intent and meaning of the judiciary act of 1799. Two days after the Legislature had passed the judiciary act of 1799, binding the property of the defendant for the payment of the judgments which might be rendered against him, the same body thought it necessary to enact another statute, entitled, " An act, for the better protection and security of the rights of orphans and their estates." To accomplish this very desirable object, so creditable to the heads and hearts of our legislators, they declared : " When any guardian, executor, or administrator, chargeable with the estate of any orphan, or deceased person, to him, her, or them committed, *shall die so chargeable,* his, her, or their executors or administrators shall be compellable to pay out of his, her, or their estate, so much as shall appear to be due to the estate of such orphan or deceased person,

*before any other debt of such testator or intestate.*" Notwithstanding the Legislature had bound the property'of the defendant, by the judgment for the payment of the debt, so as to prevent its *alienation* by him ; yet it doubtless occurred to their minds, that such defendant might be a guardian, executor, or administrator, and might *die chargeable as such ;* and, therefore, made provision for just such a case, by declaring, so much as shall appear to be due such orphan, or deceased person, should be paid out of the estate of such testator or intestate, *before any other debt.* We cannot for a moment suppose the Legislature intended to be so inconsistent as to declare the amount due the estate of the orphan should be paid *before any other debt* of the testator, or intestate, when his whole estate was liable at the same time to be appropriated towards the satisfaction of the judgments. Such a construction would be very far from protecting and securing the *rights of orphans, and their estates.* Admit the act of 18th Feb. 1799, is *inconsistent* with the act of 16th Feb. 1799 ; the former being the later statute, must prevail ; but we think such a construction can be given to them, as to enable both to stand, and effect the intention of the Legislature.

The 36th section of the judiciary act of 1799 was evidently intended to bind the property of the defendant for the payment of the debt, and to prevent an alienation thereof by him, to defeat such payment. The 5th section of the act of 18th Feb. 1799, was intended for the protection of the estates of orphans, when any guardian, executor, or administrator, should die, chargeable with such orphans' estate in his hands. In order to give effect to this last act, a particular state of facts must exist. The deceased must have been a guardian, executor, or administrator, and must have *died chargeable* with the estate of an orphan or deceased person, to him committed.

Now, the record in this case shows the judgments were obtained against Watson in his lifetime, and of course bound his property, as we have already shown, according to the provisions of the judiciary act of 1799, and had he have lived, the 5th section of the act of 18th February, 1799, never could have applied to him, or his property ; but the moment he *died chargeable*, as the record states, *as guardian* of the plaintiffs in error, in the sum of $16,000 00,·the act does apply, and declares their claim shall be paid in preference to *any other debt.* The defendants in error are judgment creditors, who did not have their judgments satisfied out of the property of the deceased, in his lifetime. The plaintiffs in error are orphans, who allege the deceased was their guardian, and *died chargeable as such* to them in the sum of $16,000 00, and that the estate of Watson is *insolvent ;* that the property in the hands of his executors is not sufficient to pay their claim, and pray their demand against Watson's estate may be paid before any other debt, out of the property now in the hands of his executors. We are of the opinion, the intention of the Legislature is too clear, and the words of the act too plain, for us to entertain any doubt upon this question. The act declares the claim of the plaintiffs shall be paid *before any other debt of the testator.* Judgments are *debts of record.—2 Bl. Com.* 511.

It was urged at the bar that, in the lifetime of Watson, the judgment creditors could have proceeded *to* levy upon, and sell, this identical property, now in the hands of his executors, in satisfaction of their debts ;

therefore, they were entitled to the same rights now. The counsel for the defendants in error seem to overlook the fact, that the *title* to the property was in Watson at the time of his death, although they might have divested the title, by levy and sale in his lifetime; yet, failing to do so, the same is now assets in the hands of his executors, and the sovereign power of the State has declared the manner in which those assets shall be disposed of, he having *died chargeable as the guardian of the plaintiffs in error*. With equal propriety could the defendants in error contend, they would have been entitled to have had their judgments satisfied out of the property of the testator, in preference to a debt due the State, although the act of 1792 expressly declares, *debts due the public* shall be paid *before judgments*. The only difficulty in the way of the defendants in error is, that Watson died before their judgments were collected, and he died *chargeable as the guardian of the plaintiffs in the sum of* $16,000 00; then comes the act of 18th Feb. 1799, which declares their claim shall be paid, *before any other debt of the testator*. This statute, in our judgment, is founded on clear equity. The record, in this case, shows that Watson, as the guardian, sold the land and negroes of the plaintiffs, and mixed the proceeds thereof with his own estate. If he had not sold their property, but held it as their guardian, the judgment creditors could not have sold it in satisfaction of their judgments. The estate of Watson having been increased, to the extent of the value of their property, sold by him as their guardian, it is nothing but sheer justice, the claim of the plaintiffs should be first paid out of it, before any other debt. We are, therefore, of the opinion the court below committed error in sustaining the demurrer to the complainant's bill, and dismissing the same. Let the judgment be reversed, and the cause reinstated.